IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

DIANNE TACKET                                                                    PLAINTIFF

V.                                                    CIVIL ACTION NO. 3:15CV45-NBB-JMV

GUARDIAN LIFE INSURANCE COMPANY
OF AMERICA, ADVANCED HEALTHCARE
MANAGEMENT D/B/A GRACELAND CARE
CENTER, AND JOHN DOE                                                      DEFENDANTS

## MEMORANDUM OPINION

Came on to be heard this day the plaintiff's motion to remand and defendant Advanced

Healthcare Management's motion to dismiss. Upon due consideration of the motions, responses,

exhibits, and applicable authority, the court is ready to rule.

Factual and Procedural Background

The plaintiff, Dianne Tacket, was employed as a licensed practical nurse by a nursing

home formerly known as Graceland Care Center of Pontotoc (now doing business as Pontotoc

Health & Rehab) in Pontotoc, Mississippi, from November 2012 through August 2013. She

alleges she was employed by Advanced Healthcare Management, Inc. (hereinafter "Advanced

Healthcare"), a Mississippi Corporation, doing business as Graceland Care Center, but the

defendants assert that plaintiff's actual employer was Pontotoc LTC, Inc. Pontotoc LTC, Inc.,

has the same corporate structure as Advanced Healthcare with the same incorporator, registered

agent, directors, and officers, as well as the same address and effective date. The defendant

asserts that Advanced Healthcare is a "consulting company that provided Pontotoc LTC with

various services, including arranging a group life policy for Pontotoc LTC's employees."

Despite their disagreement, the parties acknowledge that the plaintiff's allegation that Advanced

Healthcare was her employer must be taken as true for the purposes of the defendant's motion to dismiss.

Since September 2006, Advanced Healthcare has sponsored and maintained an employee welfare benefit plan, named the "Advanced Healthcare Management, Inc., Flexible Benefits and Welfare Plan," (hereinafter, "the Plan") to benefit employees working for Advanced Healthcare and for certain nursing home facilities in Mississippi, including Pontotoc LTC.  In October 2012, Advanced Healthcare submitted an application for coverage to defendant Guardian Life Insurance Company of America (hereinafter "Guardian") for the purpose of partially funding the Plan with certain insurance coverage for the aforementioned employees and their dependents. Guardian subsequently issued Group Policy Number G-00481946 to Advanced Healthcare.

On November 8, 2012, defendant John Doe, an unidentified agent of defendant Guardian, met with Tacket and other Advanced Healthcare employees about participating in a company sponsored group term life insurance program.  The plaintiff enrolled in the Plan and Group Policy, and her coverage began the following month, December 2012.  The plaintiff selected various insurance coverage for herself and her family, including dependent voluntary term life insurance for her spouse, Bobby Tacket.  The plaintiff alleges that John Doe informed her that coverage in an amount greater than $25,000.00 would require a physical examination prior to the policy being issued.  Plaintiff then selected the $25,000.00 coverage.  She alleges Guardian never requested a physical examination of Bobby Tacket or proof of insurability.

According to the terms of the Group Policy, if a dependent spouse is over 65 years of age, proof of insurability is required for dependent optional term life insurance coverage in excess of $5,000.00.  The policy states as follows:

2

Proof of insurability requirements apply to dependant optional term life insurance. Such requirements may apply to the full benefits amount or just part of them. When proof of insurability requirements apply, it means the employee must submit to us proof that a dependent is insurable, and we must approve the proof in writing before the insurance, or the specified part becomes effective.

We [Guardian] require proof as follows:

* * *

We require proof for any amount of dependent optional term life insurance in excess of $25,000.00 with respect to a dependent spouse.

We require proof for any amount of dependent optional term life insurance in excess of $5,000.00 with respect to a dependent spouse, if the dependent spouse's scheduled dependent optional term life effective date is after he or she reaches age 65.

* * *

A dependent is not insured by any part of this plan that requires such proof until the employee gives us this proof, and we approve it in writing.

* * *

Proof or Proof of Insurability means an application for insurance showing that a person is insurable.

The policy also requires that premiums "must be paid by the policyholder [Advanced] at an office of the Guardian or to a representative that we have authorized...."

The plaintiff alleges she was never provided with a copy of the Group Policy or presented with a certificate of coverage and was therefore never put on notice that her premiums were not applied to the coverages which she had chosen.

In addition to the requirements set forth in the Group Policy, the enrollment form provides:

**IMPORTANT NOTES**

If you waive life or disability coverage and later decide to enroll, you will have to

provide, at your own expense, proof of each person's insurability. Guardian reserves the right to reject your request.

Children will not be covered until they reach 14 days.

Based on your plan benefits and your age, you may be required to complete an additional evidence of insurability form for Voluntary Life and/or Guardian Universal Life.

The plaintiff signed this document.

Bobby Tacket died on April 11, 2013. On April 23, 2013, plaintiff made a claim for benefits in the amount of $25,000.00 to Guardian. Guardian denied plaintiff's claim for the full benefit and issued payment for $5,000.00 on the grounds that Bobby Tacket was over the age of 65 at the time of enrollment and because the required proof of insurability for coverage in excess of $5,000.00 for dependent spouses above age 65 was not submitted and approved by Guardian. Guardian maintains that it would not have approved dependent coverage above $5,000.00 based on Bobby Tacket's medical history.

The plaintiff subsequently requested an administrative appeal of Guardian's decision. Guardian received the plaintiff's appeal on September 23, 2013. Guardian asserts that the appeal was conducted by a Guardian "Adjudication and Procedural Specialist," separately and independently from the initial claim review. Guardian affirmed its decision to deny the $25,000.00 coverage on November 12, 2013.

The plaintiff attached, as an exhibit to her complaint, Guardian internal email correspondence dated October 2, 2013, and therefore occurring during the pendency of her administrative appeal, between Deanne Mills and another Guardian employee named Cheryl Davis wherein Mills stated, "[B]illing mistakenly left off all dependent coverage – including dependent coverage for a spouse in the amount of $25,000. This was only realized once the

4

spouse passed away in April of 2013." Mills further states in the email, "Since we originally

made the error by never requesting EOI [evidence of insurability], we would like to see if an

Underwriting review can be completed retroactively based on the medical information we have

on file (we can't ask the spouse for EOI . . . .)."

Advanced Healthcare began collecting premiums from the plaintiff in December 2012 in

the amount of $144.34 per month. The plaintiff states that Advanced Healthcare has offered no

explanation as to how these monthly premium payments were utilized. She asserts that the

amount Advanced Healthcare withheld from her paycheck on a bi-monthly basis exceeded the

amount Guardian billed Advanced Healthcare and therefore included unauthorized amounts

retained by Advanced Healthcare.

Guardian, through the affidavit of its representative, Deanne Mills, contends that

"Guardian did not bill or receive any premium payments for $25,000 in optional dependent life

insurance coverage for the Plaintiff's husband, Bobby Tacket." Guardian also asserts that

"Advanced Healthcare has never been an agent of Guardian. As a policyholder, Advanced

Healthcare has only had a contractual relationship with Guardian, the terms of which are set

forth in the Group Policy."

The plaintiff filed this action on February 11, 2015, in the Circuit Court of Pontotoc

County, Mississippi, asserting claims for breach of contract, promissory estoppel based on

written contract, promissory estoppel based on oral representations, negligence, post-claim

underwriting, fraud in the inducement and/or negligent misrepresentation and failure to procure,

bad faith, and negligent infliction of emotional distress. Guardian subsequently removed the

case to this court alleging federal question jurisdiction based on its assertion that the plaintiff's

claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29

U.S.C. §§ 1001-1461.  Guardian also removed on the basis of diversity jurisdiction, asserting

that the non-diverse defendant, Advanced Healthcare, was fraudulently and improperly joined as

a defendant to defeat diversity jurisdiction.  The plaintiff has moved to remand, arguing, inter

alia, that the actions which give rise to her claims occurred prior to her participation in the Group

Policy and are therefore not preempted by ERISA and that the complaint states plausible claims

against Advanced Healthcare.  Advanced Healthcare has moved to dismiss pursuant to Fed. R.

Civ. P. 12(b)(6).  The court will address both motions in this opinion.

Standard of Review

A defendant may remove a civil action filed in state court to federal court if the federal

court would have had original jurisdiction over the case.  28 U.S.C. § 1441(a).  "The removing

party bears the burden of showing that federal jurisdiction exists and that removal was proper."

*Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  In

determining whether the court has jurisdiction so that removal was proper, the court considers

the claims in the state court petition as they existed at the time of removal.  *Id.*  "Any ambiguities

are construed against removal because the removal statute should be strictly construed in favor

of remand."  *Id.*  "A motion to remand is normally analyzed with reference to the well-pleaded

allegations of the complaint, which is read leniently in favor of remand under a standard similar

to Rule 12(b)(6)."  *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005) (citing *Illinois

Cent. R.R. Co. v. Smallwood*, 385 F.3d. 568, 573 (5th Cir. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A

court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor

of the plaintiff.  *Id.*  The court, however, is not bound to accept as true legal conclusions couched

as factual allegations.  *Iqbal,* 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the

plaintiff's claim is true.  *Id.*  It need not contain detailed factual allegations, but it must go

beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.

*Twombly,* 550 U.S. at 555.  The face of the complaint must contain enough factual matter to raise

a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's

claim.  *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 255-57 (5th Cir. 2009).

Analysis

Guardian maintains that the plaintiff's claim for benefits under the Plan and Group Policy

is governed by ERISA and that, therefore, federal question jurisdiction exists in this case, and

removal was proper.  Removal is generally available to a defendant in "any civil action brought

in a State court of which the district courts of the United States have original jurisdiction...."  28

U.S.C. § 1441(a).  Because federal preemption is typically a federal defense to a plaintiff's suit,

"it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize

removal to federal court."  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  A

corollary to the well-pleaded complaint rule, however, is that Congress may so completely

occupy a particular field that a civil complaint raising this select group of claims becomes

federal in character. *Id.* at 63-64. It has been determined that Section 502 of ERISA, 29 U.S.C. § 1132(a), "by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 338 (5th Cir. 1999). Because the plaintiff's suit is "a suit by a beneficiary to recover benefits from a covered plan, it falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes." *Taylor*, 481 U.S. at 62-63.

> Under ERISA "an employee welfare benefit plan" is defined as follows:
>
> [A]ny plan, fund, or program...established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise...medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1). The Fifth Circuit has set forth a test for determining whether a particular plan qualifies as an "employee welfare benefit plan" under ERISA. The court must ask whether the plan "(1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA 'employee benefit plan' – establishment or maintenance by an employer intending to benefit employees." *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993).

A plan "exists" if it can be determined from the surrounding circumstances that "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Id.* In the instant case, the record reveals that Advanced Healthcare established the Plan to benefit employees working for that company and for certain nursing home facilities in Mississippi, and their dependents, including Pontotoc LTC. The

intended benefits include various insurance coverage including the life insurance at issue here. Financing is provided by contributions from Pontotoc LTC and its employees, and the procedures for receiving benefits are set forth in the Group Policy. The first prong of the Fifth Circuit's test is thus satisfied.

The second prong of the analysis addresses whether a plan falls within the "safe-harbor provision," an exemption which excludes a plan from ERISA if "(1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer received no profit from the plan." *Id*. A plan must meet all four criteria to be exempted from ERISA by the safe-harbor provision. *Id.* In the present case, the plaintiff's employer does contribute to the Plan and plays a role in the administration of the Plan beyond merely collecting and remitting premiums. The Plan is thus not exempted from ERISA by the safe-harbor provision.

The court therefore turns to the third step in the analysis to determine whether the Plan satisfies the broad parameters of ERISA. The record is clear that the Plan was established and maintained by the plaintiff's employer with the intention of benefitting its employees and their beneficiaries. The court thus finds that the Plan meets the definition of an employee welfare benefit plan governed by ERISA.

ERISA's preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). Courts have repeatedly interpreted this clause to have expansive reach, and as a result of "the breadth of the preemption clause and the broad remedial purpose of ERISA, state laws

found to be beyond the scope of § 1144(a) are few." *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1294 (5th Cir. 1989).

The plaintiff contends that ERISA does not govern the claims set forth in her complaint because this suit involves the breach of duties concerning the sale of the policy by Guardian's agent and does not involve policy interpretation or claim decisions. The Fifth Circuit has held, however, that state law claims are preempted if:

(1)     the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and

(2)     the claims directly affect the relationship among the traditional ERISA entities – the employer, the plan and its fiduciaries, and the participants and beneficiaries.

*Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990). As the defendants note, the damages sought by the plaintiff and the claims upon which they are grounded are unquestionably based on the plaintiff's alleged right to receive benefits under the terms of an ERISA plan, and the claims directly affect the relationship among traditional ERISA entities – Guardian, Advanced Healthcare, Pontotoc LTC, and, of course, the plaintiff participant.

In another effort to avoid preemption, the plaintiff argues that the causes of action set forth in her complaint arise out of "pre-plan" activity, which she maintains falls outside the scope of ERISA. The plaintiff is mistaken. The misrepresentations alleged by the plaintiff did not occur prior to the establishment of the Plan but instead were allegedly made during the plaintiff's enrollment process for coverage under the Group Policy. This is not the type of "pre-plan" activity that affects the determination of preemption. The cases cited by the plaintiff in support of her argument that claims arising from pre-plan activity are not preempted by ERISA are distinguishable from the present case. In both *Perkins v. Time Ins. Co.*, 898 F.2d 470 (5th

Cir. 1990) and *Hobson v. Robinson*, 75 F. App'x 949 (5th Cir. 2003), the plaintiffs were owners

or co-owners of a business who made a decision to purchase a group policy for their company

for the purpose of providing employee benefits to their employees and themselves. The alleged

misrepresentations in those cases were made by an agent for the purpose of inducing the

plaintiffs to adopt the group policy/employee benefit plan for their respective companies.

Consequently, the alleged misrepresentations were made "pre-plan," as they were made prior to

the establishment of the plan by the company. In the present case, the alleged misrepresentations

were not made prior to the establishment of the Plan. The plaintiff's claims arise from coverage

she selected in an existing ERISA plan and from the allegedly improper administration of her

claim for benefits under that plan. Further, the *Hobson* court stated that "the timing of plan

formation is not the crucial factor in ERISA preemption. Rather, the extent the claim itself

relates to an ERISA plan guides our determination." *Hobson*, 75 F. App'x at 954. The *Perkins*

court found that "a claim that an insurance agent fraudulently induced an insured to surrender

coverage under an existing policy to participate in an ERISA plan which did not provide the

promised coverage 'relates to' that plan only indirectly." *Perkins*, 898 F.2d at 473. "[T]he

critical determination was whether the claim itself created a relationship between the plaintiff

and defendant that is so intertwined with an ERISA plan that it cannot be separated." *Hobson*,

75 F. App'x at 954. This court finds the latter to be the case in the present action. The court is

therefore unpersuaded by the plaintiff's argument regarding pre-plan activity and determines that

her claims are preempted by ERISA.

The court now turns to Advanced Healthcare's motion to dismiss for failure to state a

claim and the argument that Advanced Healthcare has been improperly joined to defeat diversity

jurisdiction.  The Fifth Circuit has recognized two methods to establish improper joinder:

"(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish

a cause of action against the non-diverse party in state court."  *Smallwood v. Illinois Cent. R.*

*Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir.

2003)).  As the court explained in *Travis v. Irby*:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that
> there is no possibility of recovery by the plaintiff against an in-state defendant,
> which stated differently means that there is no reasonable basis for the district
> court to predict that the plaintiff might be able to recover against an in-state
> defendant.

*Travis*, 326 F.3d at 648.  "Since the purpose of the improper joinder inquiry is to determine

whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the

joinder, not the merits of the plaintiff's case."  *Smallwood*, 385 F.3d at 573.

The defendants do not allege actual fraud in the pleadings of jurisdictional facts; so the

court looks to the second method and addresses whether the plaintiff could establish a cause of

action against the non-diverse defendant in state court.  The court finds that under the applicable

standard here, by which the court must accept the plaintiff's well-pleaded assertions as true, the

court cannot at this time find that there is no reasonable basis to predict that the plaintiff may be

able to recover against Advanced Healthcare.  The plaintiff alleges, inter alia, that defendant

Advanced Healthcare deducted more money from her paycheck than was necessary for the

insurance coverage she actually received under the Group Policy.  The plaintiff contends in her

briefing, "The amount Advanced Healthcare retained on a bi-monthly basis exceeded the amount

Guardian billed Advanced Healthcare for Plaintiff's premium, and therefore, included

unauthorized amounts being withheld."  Since Guardian asserts it did not bill or receive premium

payments for the $25,000 in optional dependent life insurance coverage at issue, the plaintiff asks, "[W]here did the additional payment retained by Advanced Healthcare go if not to Guardian?" This is a valid question, and the court is unwilling to dismiss Advanced Healthcare until the question is answered to its satisfaction; therefore, at this stage of the proceedings, the court finds that Advanced Healthcare should remain as a defendant in this case.

Conclusion

For the foregoing reasons, the court finds that the defendants' removal based on ERISA preemption was proper, and therefore the plaintiff's motion to remand is not well taken and should be denied. The court further finds that defendant Advanced Healthcare's motion to dismiss is not well taken and should be denied. A separate order in accord with this opinion shall issue this day.

This, the 16th day of March, 2016.

 /s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**